UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 02-80087 CR-HURLEY

Case No.

18 U.S.C. 371
18 U.S.C. 2
15 U.S.C. 78j(b)
15 U.S.C. 78ff(a)
17 C.F.R. 240.10b-5

**MAGISTRATE JUDGE
VITUNAC**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PAUL D. LEMMON, | ) |
| ANDREW K. PROCTOR, | ) |
| MICHAEL T. REITER, and | ) |
| JUSTYN S. FELDMAN, | ) |
| | ) |
| Defendants. | ) |

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Voyager Group Ltd. ("Voyager"), a corporation with its principal place of business in Bermuda, purported to be a full-service financial services company. Voyager was also a member of the Bermuda Stock Exchange. Among other products, Voyager managed a mutual fund called the Voyager Select IPO Fund Ltd.

2. Defendant **PAUL D. LEMMON** was the founder and managing director of Voyager.

3. CT Cosmetics Inc. was a Delaware corporation with its principal place of business located

in Bermuda. CT Cosmetics Inc. was in the process of registering to become a publicly traded company. The proposed ticker symbols for CT Cosmetics were, at various times relevant to this Indictment, CEBP and CCHO.

4. Defendant **ANDREW K. PROCTOR** was the chairman, a director, and the chief financial officer of CT Cosmetics Inc.

5. Defendant **ANDREW K. PROCTOR** also was a director of Voyager.

6. Defendant **MICHAEL T. REITER** was a stock promoter, who recruited stock brokers to artificially inflate the price of stock.

7. Defendant **JUSTYN S. FELDMAN** was a licensed stock broker and a principal and vice president of Dalton Kent Securities Group, Inc., a securities broker dealer in New York.

8. An agent of the Federal Bureau of Investigation, acting in an undercover capacity, posed as a corrupt securities trader for a fictitious stock mutual fund on behalf of a number of investors who had invested approximately $800 million in the fund.

9. Connelly & Williams Associates, Inc. ("Connelly & Williams") was the purported United States representative of the stock mutual fund. Connelly & Williams was purportedly located in Atlanta, Georgia.

10. Two cooperating witnesses posed as corrupt stock promoters and consultants who presented prospective stock deals to the undercover agent's mutual fund.

<u>**COUNT 1**</u>

<u>Conspiracy to Commit Wire and Securities Fraud</u>

11. The allegations in paragraphs 1-10 of this Indictment are incorporated by reference as though fully set forth herein.

12.   From on or about December 13, 1999 through on or about at least the date of this Indictment, in Palm Beach and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants,

**PAUL D. LEMMON,**
**ANDREW K. PROCTOR,**
**MICHAEL T. REITER, and**
**JUSTYN S. FELDMAN,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

a.   to knowingly and willfully devise a scheme and artifice to defraud and deprive others of the intangible right of honest services, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346; and

b.   directly and indirectly, to knowingly and willfully use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of a security in contravention of rules and regulations prescribed by the Securities and Exchange Commission as necessary and appropriate in the public interest and for the protection of investors, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

-3-

## OBJECTS OF THE CONSPIRACY

13. It was the purpose and object of the conspiracy for the defendants to unlawfully enrich themselves by defrauding the undercover agent's mutual fund and by fraudulently causing the price of CCHO stock to be artificially increased through payoffs and kickbacks to brokers that were undisclosed to the undercover agent's mutual fund and the public so that the defendants' CCHO stock could be sold at a significant value when, in actuality, it was virtually worthless.

## MANNER AND MEANS OF THE CONSPIRACY

14. It was a part of the conspiracy that the undercover agent's mutual fund would pay approximately $6 million for CCHO stock to Voyager Select IPO Fund, which, in reality, was **PAUL D. LEMMON** and **ANDREW K. PROCTOR**.

15. It was also a part of the conspiracy that the undercover agent and the cooperating witnesses would receive a 50% undisclosed cash bribe or "kickback" for themselves from **PAUL D. LEMMON** and **ANDREW K. PROCTOR** for inducing the undercover agent's mutual fund to purchase the $6 million of CCHO stock.

16. It was also a part of the conspiracy that **MICHAEL T. REITER** and **JUSTYN S. FELDMAN** would receive undisclosed kickbacks for artificially increasing the price of CCHO and maintaining the artificially high price of CCHO for a period of months by arranging for the sale of CCHO to customers of brokers whom **MICHAEL T. REITER** and **JUSTYN S. FELDMAN** enlisted in the scheme by bribing them.

17. It was also a part of the conspiracy that **PAUL D. LEMMON** and **ANDREW K. PROCTOR** would receive for themselves the bulk of the remaining $6 million purchase.

18. It was also a part of the conspiracy that prior to the $6 million trade, the undercover

-4-

agent's mutual fund would purchase approximately $25,000 of CCHO stock from Voyager, and, thus, from **PAUL D. LEMMON** and **ANDREW K. PROCTOR**, as a "test trade."

19. It was also a part of the conspiracy that **PAUL D. LEMMON** and **ANDREW K. PROCTOR** would cause the undercover agent to receive a $20,000 kickback on the $25,000 "test trade" so the undercover agent could give the undisclosed kickback to his purported mutual fund due diligence officers to place CCHO on a list of companies approved for purchase by the undercover agent's mutual fund so that the $6 million deal could proceed at a later date.

20. It was also a part of the conspiracy that **PAUL D. LEMMON** would generate a false paper trail to make it appear as though the $20,000 kickback was payment to the undercover agent for legitimate research ostensibly performed.

<u>OVERT ACTS</u>

21. In furtherance of the conspiracy and to effect the object thereof, the following overt acts, among others, were committed in Palm Beach and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, by one or more co-conspirators:

a. On or about August 28, 2000, **PAUL D. LEMMON** had a telephone conversation with the cooperating witnesses in which he expressed a general interest in committing securities fraud with the cooperating witnesses.

b. On or about September 18, 2000, **ANDREW K. PROCTOR** had a personal meeting with the cooperating witnesses and the undercover agent in which he stated that Voyager Securities Initial Public Offering Fund would "purchase" three million shares of CCHO from Voyager for $1.00 per share, and sell those shares to the undercover agent's mutual fund for $2.00 per share, and then provide the cooperating witnesses and the undercover agent with the $1.00 per

share difference as an undisclosed kickback.

c.   On or about September 18, 2000, **PAUL D. LEMMON** had a telephone conversation with the cooperating witnesses in which **PAUL D. LEMMON** confirmed that he and **ANDREW K. PROCTOR** were equal partners in the CCHO deal.

d.   On or about October 4, 2000, **MICHAEL T. REITER** had a telephone conversation with the cooperating witnesses in which **MICHAEL T. REITER** stated his intention to artificially increase the price of CCHO stock by paying undisclosed bribes to brokers to sell CCHO stock to their clients, in exchange for an undisclosed payoff from **PAUL D. LEMMON**, **ANDREW K. PROCTOR**,  the cooperating witnesses and the undercover agent.

e.   On or about October 26, 2000, **MICHAEL T. REITER** had a telephone conversation with the cooperating witnesses in which **MICHAEL T. REITER** stated that it was no problem to sell about $500,000's worth of CCHO stock to clients to keep the price of CCHO stock artificially high for a few months following the undercover agent's mutual fund purchase.

f.   On or about November 2, 2000, **MICHAEL T. REITER** and **JUSTYN S. FELDMAN** met with the cooperating witnesses and the undercover agent and disrobed down to their underwear to ensure that no one would record or transmit the ensuing discussions regarding **MICHAEL T. REITER**'s and **JUSTYN S. FELDMAN**'s roles in artificially inflating the price of CCHO stock.

g.   On or about November 8, 2000, **ANDREW K. PROCTOR** had a telephone conversation with the cooperating witnesses in which **ANDREW K. PROCTOR** agreed to execute a "test trade" of CCHO stock in which the undercover agent's mutual fund would purchase $25,000's worth of CCHO stock, and **ANDREW K. PROCTOR** and **PAUL D. LEMMON** would provide

-6-

the cooperating witnesses and the undercover agent with a $20,000 undisclosed kickback on the transaction for the purposes of paying off the Connelly & Williams due diligence researchers to place CCHO on a list of stocks approved for purchase.

h.  On or about November 13, 2000, **PAUL D. LEMMON** and **ANDREW K. PROCTOR** caused the wire transfer of $25,000 from the undercover agent's bank account in Miami, Florida, to Citibank, N.A., in New York for credit to Banc of America Securities, L.L.C., for further credit to Voyager Securities Ltd. to effect the purchase of CCHO stock (the "test trade").

i.  On or about November 21, 2000, **ANDREW K. PROCTOR** and **PAUL D. LEMMON** had a telephone conversation with the cooperating witnesses in which they discussed executing the "test trade" of CCHO stock and paying off the Connelly & Williams due diligence officers in Atlanta to place CCHO on a list of stocks approved for purchase by the undercover agent's mutual fund.

j.  On or about December 12, 2000, **PAUL D. LEMMON** had a telephone conversation with the cooperating witnesses in which **PAUL D. LEMMON** stated that he had prepared a fraudulent invoice falsely showing that the undercover agent had performed research work unrelated to the CCHO purchase, to cover the undisclosed kickback on the CCHO stock purchase.

k.  On or about December 13, 2000, **PAUL D. LEMMON** and **ANDREW K. PROCTOR** caused the wire transfer of $20,000 from Voyager Securities Ltd.'s bank account to Banc of America Securities, L.L.C., for further credit to the undercover agent's personal bank account in Miami, Florida, as a kickback to provide to the undercover agent's mutual fund due diligence officers.

All in violation of Title 18, United States Code, Section 371.

-7-

<u>COUNT 2</u>

<u>Securities Fraud</u>

22.  The allegations in paragraphs 1 through 10 and 13 through 21 of this Indictment are adopted as though realleged in their entirety herein.

23.  From on or about November 30, 2000, through on or about December 13, 2000, in Palm Beach and Miami-Dade Counties and elsewhere, in the Southern District of Florida, the defendants,

**PAUL D. LEMMON,**
**ANDREW K. PROCTOR,**
**MICHAEL T. REITER**, and
**JUSTYN S. FELDMAN,**

directly and indirectly, and by the use of the means and instrumentalities of interstate commerce, and of the mails, knowingly and willfully used and employed manipulative and deceptive devices and contrivances, to wit, (a) employing a device, scheme, and artifice to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in connection with the purchase and sale of a security, that is, the sale of approximately 8,300 shares of CCHO stock to the undercover agent's mutual fund, in contravention of rules and regulations prescribed by the Securities and Exchange Commission as necessary and appropriate in the public interest and for the protection of investors, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations,

Section 240.10b-5, and Title 18, United States Code, Section 2.

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

ROBIN S. ROSENBAUM
ASSISTANT UNITED STATES ATTORNEY

-9-

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: _____ PAUL D. LEMMON _____ No.:_____

Count # I:

Securities Fraud Conspiracy; in violation of 18:371 _____

*Max Penalty: Five years' imprisonment; $250,000 fine _____

Count # II:

Securities Fraud; in violation of 15:78j(b) and 78ff _____

*Max Penalty: Ten years' imprisonment; $1,000,000 fine _____

Count # :

_____

*Max Penalty:_____

Count # :

_____

*Max Penalty:_____

Count # :

_____

*Max Penalty:_____

Count # :

_____

*Max Penalty:_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: _____ ANDREW K. PROCTOR ___ No.:_____

Count # I:

Securities Fraud Conspiracy; in violation of 18:371 _____

*Max Penalty: Five years' imprisonment; $250,000 fine _____


Count # II:

Securities Fraud; in violation of 15:78j(b) and 78ff _____

*Max Penalty: Ten years' imprisonment; $1,000,000 fine _____


Count # :

_____

*Max Penalty: _____

Count # :

_____

_____

*Max Penalty: _____

Count # :

_____

_____

*Max Penalty: _____

Count # :

_____

_____

*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: _____ MICHAEL REITER _____ No.:_____

Count # I:

Securities Fraud Conspiracy; in violation of 18:371 _____

*Max Penalty: Five years' imprisonment; $250,000 fine _____


Count # II:
Securities Fraud; in violation of 15:78j(b) and 78ff _____

*Max Penalty: Ten years' imprisonment; $1,000,000 fine _____


Count # :

_____

*Max Penalty: _____


Count # :

_____

*Max Penalty: _____

Count # :

_____

*Max Penalty: _____

Count # :

_____

*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## <u>PENALTY SHEET</u>

Defendant's Name:      JUSTYN FELDMAN          No.:

Count # I:

Securities Fraud Conspiracy; in violation of 18:371

*Max Penalty: Five years' imprisonment; $250,000 fine

Count # II:
Securities Fraud; in violation of 15:78j(b) and 78ff

*Max Penalty: Ten years' imprisonment; $1,000,000 fine

Count # :

*Max Penalty:

Count # :

*Max Penalty:

Count # :

*Max Penalty:

Count # :

*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

PAUL D. LEMMON,
ANDREW K. PROCTOR,
MICHAEL REITER, and
JUSTYN FELDMAN

**Court Division:** (Select One)

\_\_\_\_ Miami   \_\_\_\_ Key West
\_\_\_\_ FTL   _X_ WPB \_\_\_ FTP

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

New Defendant(s)        Yes \_\_\_\_   No \_\_\_\_
Number of New Defendants     \_\_\_\_
Total number of counts      \_\_\_\_

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No) \_\_\_No_____
    List language and/or dialect \_\_\_\_\_English_____

4.  This case will take \_\_15\_\_ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                    (Check only one)

    I    0 to 5 days       \_\_\_\_\_    Petty    \_\_\_\_\_
    II   6 to 10 days      \_\_\_\_\_    Minor    \_\_\_\_\_
    III  11 to 20 days     \_\_X\_\_    Misdem.  \_\_\_\_\_
    IV   21 to 60 days     \_\_\_\_\_    Felony   \_\_X\_\_
    V    61 days and over  \_\_\_\_\_

6.  Has this case been previously filed in this District Court? (Yes or No) \_\_No\_
    If yes:
    Judge: _____   Case No. _____
    (Attach copy of dispositive order)

    Has a complaint been filed in this matter? (Yes or No) \_\_No\_\_\_\_\_
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____ District of _____

7.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? \_\_ Yes _X_ No   If yes, was it pending in the Central Region? \_\_ Yes \_\_ No

8.  Did this case originate in the Narcotics Section, Miami? \_\_ Yes _X_ No

ROBIN S. ROSENBAUM
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 908223

\*Penalty Sheet(s) attached                    REV.6/27/00
N:\HPantaleo\ROSENBAUM\LEMMON,PROCTOR,REITER,FELDMAN\INDPKG.wpd